UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MICHAEL FISCHER,<br><br>    Plaintiff,<br><br>    v.<br><br>D. ALGERS et al.,<br><br>    Defendants. | No. CV 13-0725-MWF (DFM)<br><br>Final Report and Recommendation of United States Magistrate Judge |

    This Final Report and Recommendation is submitted to the Honorable Michael W. Fitzgerald, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.[1]

///

---

[1] This Final Report and Recommendation has been issued to address arguments made in Petitioner's objections (Dkt. 108; hereinafter "Objections") to the original Report and Recommendation filed on August 18, 2015 (Dkt. 105). See infra fns. 6 & 8. As discussion of these issues does not affect the Court's conclusions, Petitioner was not given an opportunity to file additional objections.

## I.

## BACKGROUND

In February 2013, Plaintiff Michael Fischer, a state prisoner currently incarcerated at Mule Creek State Prison, initiated this pro se civil rights action. Dkt. 1. The operative pleading is the Second Amended Complaint, filed on August 26, 2013. Dkt. 30 ("SAC"). Plaintiff's claims arise from his previous incarceration at California Men's Colony East ("CMC East") in San Luis Obispo, California. Id. at 2.[2]

In the SAC, Plaintiff names the following CMC East personnel as Defendants, solely in their individual capacity: (1) Correctional Officer ("CO") Dawn T. Algers; (2) CO Paul Elias; (3) Sergeant Cabreros; (4) CO Q. Capanna; (5) psychologist G. Stoll; (6) Captain R. Groves; (7) Lieutenant P. Noland; (8) Sergeant Commarada; (9) CO M. Padron; (10) CO L. Soriano; (11) CO Reynolds; (12) CO P. Tennell; (13) CO Dante Webb; (14) CO J. Amarillos; and (15) CO E. Meyers. Id. at 3-4, 7, 10-11, 14-16. Plaintiff also names two Doe Defendants, a lieutenant and a sergeant, also in their individual capacity. Id. at 11.

On August 12, 2014, the Court granted in part Defendants' Motion to Dismiss,[3] dismissing claims against Defendants Stoll, Groves, and Noland

---

[2] All page citations to Plaintiff's submissions refer to the CM/ECF page numbers.

[3] Defendants directed the Motion to Dismiss to the First Amended Complaint ("FAC"). See Dkt. 33. Because the FAC and the SAC were substantially similar, the Court considered the Motion to Dismiss the FAC as a valid response to the SAC. Dkt. 29.

2

without leave to amend for failure to state a claim. Dkts. 68, 72. The Court denied the Motion to Dismiss with respect to the remaining Defendants.[4] Id.

Plaintiff's claims against the remaining Defendants relate to the alleged physical injury Plaintiff suffered from a "remote controlled fiber optic type camera" while housed in a crisis bed in administrative segregation. SAC at 5. Plaintiff alleges that his injuries occurred between December 3, 2011, and March 8, 2012. Id. at 5-6. According to Plaintiff, Defendants Algers, Elias, Cabreros, and Capanna used excessive force in violation of the Eighth Amendment by repeatedly "jabbing" him in sensitive areas of the body with the fiber-optic camera. Id. Plaintiff alleges that Defendant Commarada and the two Doe Defendants are liable under a theory of supervisory liability because they knew that the fiber-optic camera was being used to harm Plaintiff in this manner but did nothing to stop it. Id. at 12–13. Plaintiff alleges that Defendants Pedron, Soriano, Reynolds, Webb, Amarillos, and Meyers were deliberately indifferent to his serious medical needs because they were also aware of the violent use of the fiber optic camera on Plaintiff but took no action to prevent the harm. Id. at 17-18.

On September 8, 2014, Defendants filed a Motion for Summary Judgment based on Plaintiff's failure to exhaust administrative remedies.[5] Dkt. 75 ("MSJ"). On November 25, 2014, Defendants also filed a Motion for Judgment on the Pleadings, arguing that Plaintiff has failed to state a plausible claim and that Defendants are entitled to qualified immunity. Dkt. 88

---

[4] These Defendants sought dismissal based on failure to exhaust administrative remedies, which the Court explained was an issue to be addressed at summary judgment. See Dkt. 68.

[5] Commarada is not party to the MSJ because he has not yet been served, but the Court's exhaustion analysis applies equally to Plaintiff's claims against him. Dkt. 25.

1  ("MJOP"). Plaintiff filed Oppositions to the MJOP and MSJ on December 14
2  and 31, respectively. Dkts. 95, 97. Defendants filed Replies on January 12 and
3  14, 2015. Dkts. 99, 101.

## II.
## LEGAL STANDARD

Excluding "the rare event that a failure to exhaust is clear on the face of the complaint," the proper procedural vehicle for a defendant to raise the affirmative defense of exhaustion is through a motion for summary judgment. Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). Summary judgment should be granted only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. Id. at 324; Fed. R. Civ. P. 56(c). Conclusory or speculative statements in affidavits and moving papers are insufficient to raise genuine issues of fact. Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact is more than a scintilla of evidence or evidence that is merely colorable or not significantly probative. Addisu v. Fred Meyer, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where its resolution might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Id. Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw

reasonable inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

## III.
## DISCUSSION

For the reasons discussed below, the Court finds that Defendants' MSJ should be granted.

**A. Failure to Exhaust Administrative Remedies**

Defendants contend that Plaintiff failed to follow the prison-grievance procedures before filing suit. MSJ at 12. Plaintiff contends that he notified prison staff of his claims to the best of his ability, but the California Department of Corrections and Rehabilitation's ("CDCR") administrative appeals process was effectively unavailable to him because of Defendants' actions. See Dkt. 97 ("MSJ Opposition") at 1-2, 25-27.

The Prison Litigation Reform Act ("PLRA") requires that a litigant exhaust administrative remedies before bringing a claim in federal court. 42 U.S.C. § 1997e(a). Exhaustion of claims under the PLRA serves two primary purposes. First, it gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers." Woodford v. Ngo, 548 U.S. 81, 89 (2006) (internal quotation marks omitted). Second, exhaustion "promotes efficiency" by allowing resolution of claims "quickly and economically" before the commencement of federal litigation. Id. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90. Since Plaintiff is a state prisoner in the custody of the CDCR, he must comply with the

regulations that govern the CDCR's administrative appeals process for inmate grievances. See Cal. Code Regs. tit. 15, § 3084.1. Most appeals progress through three levels of review. See id. § 3084.7. The third level of review constitutes the ultimate decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. See id. § 3084.1(b).

Nonexhaustion is an affirmative defense, so a defendant has the initial burden of establishing a prisoner's failure to exhaust. See Albino, 747 F.3d at 1172. Here, Defendants have met that burden because it is undisputed that Plaintiff failed to reach the third level of review in the CDCR's administrative appeals process. Between January 6, 2012, and March 6, 2012, Plaintiff filed five appeals against prison personnel at CMC East. Sept. 3, 2014 Rocha Decl. ¶¶ 6-11, Exhs. B, D, F, H, J. Defendants Algers, Elias, and Soriano were the only Defendants named in any of these appeals. Id. Plaintiff's first two appeals were cancelled because he refused to sign the CDCR-1858 Rights and Responsibilities form. Id. ¶¶ 7-8, Exhs. C, E. His next two appeals were cancelled as duplicative of the first two appeals. Id. ¶¶ 9–10, Exhs. G, I. Plaintiff's fifth appeal was rejected for failure to demonstrate a material adverse effect on his welfare. Id. ¶ 11, Exh. K. Plaintiff did not appeal any of these cancellations or rejections. Sept. 2, 2014 Briggs Decl. ¶¶ 10-11. Thus, none of Plaintiff's appeals reached the CDCR's third level of review.

After a defendant establishes nonexhaustion, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable." Albino, 747 F.3d at 1172. In this case, Plaintiff has failed to present evidence that the CDCR's administrative remedies were effectively unavailable.

Plaintiff argues that Defendants interfered with his ability to comply with the CDCR's grievance procedure by not providing him with a copy of

California Penal Code Section 148.6, which is referenced on the Rights and Responsibilities form that Plaintiff refused to sign. MSJ Opposition at 14, 22. Plaintiff contends that he asked for a copy of Section 148.6, but prison officials would not provide one. Id. at 22, 30. According to Plaintiff, without a copy of Section 148.6, he could not fully understand the Rights and Responsibilities form and should not have been required to sign it. Id.

This argument is unavailing for two reasons. First, the Rights and Responsibilities form incorporates the language of Section 148.6, as modified to apply to CDCR inmates:

> Pursuant to Penal Code 148.6, anyone wishing to file an allegation of misconduct by a departmental peace officer must read, sign and submit the following statement:
>
> YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER [this includes a departmental peace officer] FOR ANY IMPROPER POLICE [or peace] OFFICER CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZEN' [sic] [or inmates'/parolees'] COMPLAINTS. YOU HAVE A RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE, THIS AGENCY MAY FIND AFTER INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN [or inmate/parolee] COMPLAINTS AND ANY REPORTS OR FINDINGS RELATING TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.

Sept. 3, 2014 Rocha Decl. Exh. C (alterations in original); see Cal. Penal Code § 148.6. This language clearly indicated the implications of signing the form,

and further research would not have enhanced Plaintiff's understanding of the form's contents.

Second, after Plaintiff's appeals were cancelled for failure to sign the Rights and Responsibilities form, he took no further formal action. In <u>Nunez v. Duncan</u>, a federal prisoner's untimely exhaustion of administrative remedies was excused because he took "reasonable and appropriate steps" to obtain an obscure document that was erroneously cited in a rejection of his appeal. 591 F.3d 1217, 1224-26 (9th Cir. 2010). Those steps went beyond searching the prison library and included multiple prison appeals, a Freedom of Information Act request to the Bureau of Prisons, and an appeal with the Justice Department's Office of Information Policy. <u>Id.</u> at 1225. Here, by contrast, Plaintiff made no further appeals of the cancellations and submitted no evidence of formal efforts to obtain a copy of the code section beyond the initial denial.[6] Accordingly, his refusal to sign the Rights and Responsibilities form because he was not given a copy of Penal Code Section 148.6 does not excuse his failure to abide by the CDCR's appeals procedure.

Plaintiff also contends that Defendant Elias "stole" the first appeal he intended to file, which apparently occurred sometime before December 29, 2011. <u>See</u> MSJ Opposition at 18; Dec. 26, 2014 Fischer Decl. ¶ 19, Exh. F at 6. Because Plaintiff was subsequently able to file the five appeals discussed above, including three appeals that named Elias, that the alleged theft of Plaintiff's

---

[6] In his declaration submitted in support of his MSJ Opposition, Plaintiff refers to two requests to go to the law library that were denied but does not identify the dates or provide copies of the alleged written requests. <u>See</u> Dec. 26, 2014 Fischer Decl. ¶ 43; <u>see</u> <u>Thornhill Publ'g</u>, 594 F.2d at 738 (requiring specific facts to avoid summary judgment). Similarly, his Objections refer to "abuse" and "taunts, verbal threats and lack of access to materials needed to complete" his appeals, such as "pens[] and [] the law library," Objections at 2-3, but Plaintiff offers no specific facts about these claims.

first appeal did prevent him from pursuing his grievances to the third level of review. Thus, administrative remedies were not unavailable to him.

Plaintiff contends that even though his staff complaints did not progress through the third level of review, he adequately alerted prison personnel to the situation. MSJ Opposition at 10. According to Plaintiff, he and his father presented his grievance to "5 prison officials a total of 22 times." Id. Evidentiary issues aside,[7] the requirement that an inmate exhaust administrative remedies through the prison system's established procedure cannot be circumvented by simply informing prison officials verbally or by letter. Woodford, 548 U.S. at 90. Excusing Plaintiff from the formal administrative appeals procedure on this basis would effectively negate the purpose of the exhaustion requirement. See id. at 90-91 ("[N]o adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").[8]

For these reasons, the Court finds that Plaintiff has failed to exhaust his administrative remedies, requiring summary judgment in Defendants' favor.

///
///
///

---

[7] Plaintiff submitted 35 exhibits in support of his MSJ Opposition, most of which are handwritten letters from Plaintiff and his father that implicate obvious hearsay objections. See Dkt. 98; Johnson v. Dunnahoe, No. 08-0640, 2013 WL 793220, at *1 (E.D. Cal. Mar. 4, 2013) (granting motion to exclude inmate's letter "setting forth his account of the incident at issue" because offered for truth of matter asserted).

[8] Plaintiff's Objections reiterate his claims about his informal efforts to tell prison officials about his "torments" at the hands of prison officials. Objections at 3-4. For the reasons discussed in the text, these informal efforts are legally insufficient to satisfy the exhaustion requirement.

**B.     Remaining Motions**

Because the Court finds that summary judgment should be granted in favor of all Defendants, Defendants' MJOP is moot.[9] Plaintiff has also filed a Request for Scheduling Order and a Motion to Compel. Dkts. 90, 94. These motions are denied as duplicative of previous discovery requests that the Court has already denied with explanation. See Dkt. 93.

## IV.
## CONCLUSION

IT IS THEREFORE RECOMMENDED that the District Judge issue an Order: (1) approving and accepting this Report and Recommendation; (2) granting Defendants' Motion for Summary Judgment; (3) denying as moot Defendants' Motion for Judgment on the Pleadings; (4) denying Plaintiff's discovery motions; and (5) dismissing all remaining Defendants named in the SAC without prejudice and entering judgment accordingly.

Dated: September 21, 2015

DOUGLAS F. McCORMICK

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

---

[9] Even if Defendants' MSJ had not been granted, the MJOP would have been denied because no answer has been filed. See Fed. R. Civ. P. 12(c) (motion for judgment on pleadings can be made only "[a]fter the pleadings are closed"); Doe v. United States, 419 F.3d 1058, 1061 (9th Cir. 2005) (holding that Rule 12(c) motion is premature if no answer has been filed).